IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AKASHA SHAYTAN. F.,

                          Plaintiff,                    Civil Action No.
                                                        5:19-CV-0977 (DEP)

        v.

ANDREW M. SAUL, Commissioner Social
Security Administration,

                          Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF                ELIZABETH V. KRUPAR, ESQ.
MID-NEW YORK, INC.
221 South Warren St.
Syracuse, NY 13202

FOR DEFENDANT

HON. ANTOINETTE T. BACON            PAUL NITZE, ESQ.
Acting United States Attorney       Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


ORDER

        Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral

argument was heard in connection with those motions on September 1,

2020, during a telephone conference conducted on the record. At the

close of argument I issued a bench decision in which, after applying the

requisite deferential review standard, I found that the Commissioner's

determination resulted from the application of proper legal principles and is

supported by substantial evidence, providing further detail regarding my

reasoning and addressing the specific issues raised by the plaintiff in this

appeal.

After due deliberation, and based upon the court's oral bench

decision, which has been transcribed, is attached to this order, and is

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is

GRANTED.

2)    The Commissioner's determination that the plaintiff's disability

ended on September 14, 2017, and the plaintiff has not become disabled

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C.
§ 636(c), has been treated in accordance with the procedures set forth in General
Order No. 18. Under that General Order once issue has been joined, an action such as
this is considered procedurally, as if cross-motions for judgment on the pleadings had
been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

again since that date, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 8, 2020
            Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
AKASHA F.,

                                     Plaintiff,

-v-                                  19-CV-977

COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.
-----------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
September 1, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LEGAL AID SOCIETY OF MID-NEW YORK, INC.
    221 South Warren Street
    Suite 310
    Syracuse, New York 13202
    BY:  **ELIZABETH V. KRUPAR, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **PAUL NITZE, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

```
 1              (The Court and all parties present by telephone.

 2    Time noted:  1:33 p.m.)

 3              THE COURT:  Let me begin by thanking both counsel for

 4    excellent detailed and forceful presentations dealing with this

 5    interesting case.

 6              Plaintiff commenced this proceeding pursuant to 42,

 7    United States Code, Sections 405(g) and 1383(c)(3) to challenge

 8    a determination by the Commissioner of Social Security.  This is

 9    a somewhat different case than the ordinary in that the

10    plaintiff was previously at one time granted benefits under the

11    Social Security Act.  The focus of the Administrative Law

12    Judge's decision in this case and the Commissioner's ultimate

13    determination was whether medical improvement had occurred and

14    whether, notwithstanding that medical improvement, plaintiff

15    continued to be disabled and unable to perform work functions in

16    positions in the national economy.

17              The background is as follows:  Plaintiff is in the

18    process, beginning in August of 2017, of a transgender

19    transformation, female to male.  The plaintiff prefers to be

20    called Jakob, with a K, although he has not legally changed his

21    name.  As the Administrative Law Judge, I will refer to the

22    plaintiff using male pronouns.

23              Plaintiff was born in February of 1993 and is

24    currently 27 years old.  He stands 5'3" or 5'2" inches,

25    depending on where in the record you refer, in height and is
```

1  obese, weighing somewhere at various times between 196 and

2  225 pounds.  Plaintiff lives in an apartment in Syracuse with

3  his partner, David W.  It is a one bedroom fourth floor

4  apartment.  They have a cat.  Plaintiff has previously lived in

5  Arizona and with his mother in Niagara Falls.  Plaintiff has a

6  high school degree and one year of college education.  Plaintiff

7  has a massage therapy certification.

8            Plaintiff was never married and has no children.  He

9  is right-handed.  He has no driver's license.  He does use

10  public transportation, including buses and Ubers.  Plaintiff has

11  never worked except as a seasonal employee in Arizona at age 16.

12  He also stated that he has done some volunteer work at a

13  library.

14            Physically, plaintiff has been treated for

15  Legg-Calve-Perthes disease, which, as I understand it, is a

16  childhood disease that affects the hip and occurs when the blood

17  supply to the rounded head of the femur is temporarily disrupted

18  causing bone cells to die, a process known as avascular

19  necrosis.  The plaintiff underwent, to address that condition, a

20  hip replacement in January of 2014 at the Shriners Hospital.  He

21  also suffers from polycystic ovary syndrome or PCOS.  He

22  presented to the emergency rooms at two hospitals with vaginal

23  bleeding, once in Oneida in May of 2016, and once at Upstate in

24  February of 2018.  He also suffers from endometriosis.

25            Mentally, plaintiff has been variously diagnosed as

1   having posttraumatic stress disorder or PTSD, depression and

2   depressive disorder, gender dysphoria, anxiety disorder, and

3   dissociative identity disorder.  Plaintiff's partner, David,

4   testified that plaintiff has as many as ten separate identities.

5   Plaintiff undergoes hallucinations.

6          Plaintiff initially saw Dr. Emeka Anumba who

7   apparently has abandoned the practice of medicine.  His primary

8   provider is Nurse Practitioner Kathleen McDonald at

9   St. Joseph's.  He also sees Dr. Rachel Hopkins for diabetes and

10  transgender evaluation and treatment.  He receives treatment at

11  Syracuse Behavioral Health, which is also known as or has

12  transitioned to Helio Health, including from LMSW Anita Fellows

13  who he sees weekly.  There's indication that his care is

14  overseen by Dr. Damon Tohtz, although there did not appear to be

15  any records showing that Dr. Tohtz has actually examined or

16  evaluated the plaintiff.

17         Plaintiff is on variations medications, including

18  Klonopin, Risperdal, Metformin, Lisinopril, testosterone since

19  September of 2017, insulin, and Ibuprofen.  Plaintiff testified

20  he's never smoked, although at page 565 there's indication he's

21  told Dr. Ganesh that he was a former smoker.

22         Plaintiff has a fairly wide range of activities of

23  daily living.  He is able to groom, cook and prepare meals, wash

24  dishes, clean, mop, sweep, vacuum.  There's a question as to

25  whether he's able to do laundry, and the record is equivocal on

1    that issue.  He uses public transportation as I previously

2    indicated, shops, goes out alone, socializes, reads, writes, he

3    does beaded jewelry, watches television, engages in social

4    media, swims, goes out to dinner occasionally and to the movies,

5    and watches David, his partner, play video games.

6             Procedurally, plaintiff was found to be disabled on

7    January 24, 2013, and eligible for Supplemental Security Income

8    Title XVI benefits with an onset date of November 7, 2012.  On

9    September 14, 2017, there was a determination of medical

10   improvement affecting plaintiff's ability to work and a finding

11   of no disability was entered effective on September 14, 2017.  A

12   hearing was conducted by Administrative Law Judge Robyn L.

13   Hoffman on August 15, 2018, to address the issue of medical

14   improvement.  At that hearing, plaintiff proceeded without legal

15   or other representation.  On October 18, 2018, Administrative

16   Law Judge Hoffman issued an unfavorable decision.  On July 23,

17   2019, the Social Security Administration Appeals Council denied

18   plaintiff's request for review.  In doing that, the Appeals

19   Council reviewed additional documents produced from Therapist

20   Fellows and Dr. Tohtz, as well as Nurse Practitioner McDonald,

21   and found that the consideration of those documents would not

22   have likely altered the result.  This action was commenced on

23   August 7, 2019, and is timely.

24             In her decision, ALJ Hoffman applied the test for

25   medical improvement.  At step one, the Administrative Law Judge

 1   concluded that at the reference point/time of January 24, 2013,

 2   known as the comparison point decision, or CPD, plaintiff

 3   suffered from severe impairments imposing more than minimal

 4   limitations on his ability to perform basic work functions,

 5   including Legg-Calve-Perthes disease of the left hip and

 6   obesity.

 7          The Administrative Law Judge then concluded that

 8   since September 14, 2017, plaintiff suffers from severe

 9   impairments, including Legg-Calve-Perthes disease of the left

10   hip, status post total hip replacement, obesity, hypertension,

11   polycystic ovary syndrome or PCOS, posttraumatic stress disorder

12   or PTSD, anxiety disorder, depressive disorder, gender

13   dysphoria, and dissociative disorder.

14          The ALJ next concluded at step three of the

15   sequential analysis that since September 14, 2017, plaintiff's

16   conditions do not meet or medically equal any of the listed

17   presumptively disabling conditions set forth in the

18   Commissioner's regulations, specifically considering listing

19   1.02 related to major joint dysfunctions, 1.03 related to

20   reconstructive surgery of major weightbearing joints, 7.18

21   repeated complaints of hematological disorders, 12.04

22   depression, bipolar disorder, and so forth, 12.06 related to

23   anxiety and obsessive compulsive disorder, and 12.15 related to

24   trauma and stressor-related disorders.  ALJ Hoffman also

25   considered plaintiff's obesity.

1          After making that review, ALJ Hoffman concluded that

2    since September 14, 2017, plaintiff retains the ability to

3    perform light work, specifically being able to lift and carry

4    20 pounds occasionally and 10 pounds frequently.  He can sit for

5    up to six hours and stand or walk for approximately six hours in

6    an eight-hour day with normal breaks.  Mentally, the plaintiff

7    is able to understand, carry out, and remember simple

8    instructions, respond appropriately to supervision, coworkers,

9    and usual work situations, and can deal with changes in a

10   routine work setting.

11         At step four, Administrative Law Judge Hoffman noted

12   that plaintiff did not have any past relevant work.

13         She then proceeded to step five.  She noted that if

14   plaintiff were able to perform a full range of light work, a

15   finding of no disability would be directed by the

16   Medical-Vocational Guidelines set forth in the Commissioner's

17   regulations, and specifically Rule 202.20.  Relying on Social

18   Security Ruling 85-15, ALJ Hoffman concluded that plaintiff's

19   additional limitations, nonexertional limitations that is, do

20   not preclude him from performing basic mental requirements of

21   unskilled work and, therefore, concluded that plaintiff

22   experienced medical improvement and was not disabled subsequent

23   to September 14, 2017.

24         As you know, the Court must review the determination

25   and analyze whether it is supported by substantial evidence and

1   whether the Administrative Law Judge applied the correct legal

2   principles.  The standard to be applied is extremely

3   deferential.  The Second Circuit noted in *Brault v. Social*

4   *Security Administration Commissioner*, 683 F.3d 443 from 2012,

5   that this is a very stringent test akin to or even, perhaps,

6   greater than the clearly erroneous test which we as lawyers are

7   familiar with.  Of course, substantial evidence means such

8   relevant evidence as a reasonable mind might accept as adequate

9   to support a conclusion.  The Second Circuit noted in *Brault*

10   that the standard means once an Administrative Law Judge has

11   found a fact, that fact can be rejected only if a reasonable

12   factfinder would have to conclude otherwise.

13        Plaintiff raises four basic contentions in this case.

14   He contends that the plaintiff -- the ALJ, I'm sorry, failed to

15   fulfill his duty to develop a full and fair record and

16   specifically to obtain records from Planned Parenthood and

17   Upstate Women's Health Services.  The second argument is that

18   the RFC was flawed because it did not include nonexertional

19   limitations and specifically a mild limitation in interacting

20   with others and a moderate limitation in adapting and managing

21   self.  The third argument is that the plaintiff's subjective

22   claims of symptoms were not properly analyzed.  And fourth, the

23   step five determination was flawed because it is based on an

24   erroneous residual functional capacity finding and should have

25   been the subject of vocational expert testimony rather than

1    reliance on the grids.

2             I note that the termination of medical benefits is

3    governed by both 42, United States Code, Section 421 and 20

4    C.F.R. 6416.994.  The Commissioner is statutorily charged with

5    the duty to engage in a continuing periodic review of a

6    claimant's condition.  If, based on that review, the

7    Commissioner determines that the disabling condition has

8    subsided, does not exist, or is not disabling, a termination of

9    benefits may be ordered.

10            In making a review to determine whether the cessation

11   of Social Security benefits is warranted, the Commissioner must

12   examine the claimant's current condition, ordinarily requiring

13   assessment of the plaintiff's condition at the time of the

14   hearing.  Generally speaking, termination of benefits is

15   appropriate when there has been medical improvement related to

16   the claimant's ability to work, the claimant has benefitted from

17   advances in medical or vocational technology related to the

18   ability to work regardless of the lack of medical improvement, a

19   claimant has undergone vocational therapy related to the ability

20   to work based on new or improved diagnostic or evaluative

21   techniques, it is demonstrated that a claimant's condition was

22   not as disabling as previously regarded, or substantial evidence

23   shows that an earlier finding of disability was erroneous.

24            When a claimant's medical condition improves to the

25   extent that he or she can engage in substantial gainful

1    activity, that party will no longer be entitled to benefits

2    under the act.  In order to support the termination of benefits,

3    the Commissioner must meet a burden of showing by substantial

4    evidence that a medical improvement has taken place in a

5    claimant's ability to perform work activity.

6          If there is medical improvement, the Commissioner

7    must determine whether the improvement is related to the

8    claimant's ability to work.  A medical improvement will be

9    related to the claimant's ability to work where it results in a

10   decrease in the severity of the impairment present at the time

11   of the most recent favorable medical decision and an increase in

12   the claimant's functional capacity to perform basic work

13   activities.

14         The medical improvement test entails a -- it depends

15   on whether you -- where you look.  It's either a seven or eight

16   step test.  *Michael M. v. Commissioner of Social Security*, a

17   case from this district, Magistrate Judge Baxter, it is reported

18   at 2019 WL 530801, characterizes it as a seven -- as an eight

19   step test for determining disability.  *Chavis* also deals with

20   termination of benefits, *Chavis v. Astrue*, 2010 WL 624039, a

21   decision from District Judge Kahn.  He also characterizes it as

22   an eight step test for determining medical improvement.  I think

23   Judge Hoffman may have referred to it as a seven step test, but

24   regardless, it's clear to me that she applied the appropriate

25   test.

1          Turning to the specifics of plaintiff's arguments,

2     there's no question that the plaintiff underwent medical

3     improvement of the condition that resulted in the initial

4     finding of disability when he underwent a hip replacement.

5     Turning again to the development of the record issue, there is

6     no question that the -- can I ask you to mute your phones if you

7     have not done so already?

8          MR. NITZE:  Yes, your Honor.

9          THE COURT:  So undeniably -- unquestionably, an

10    Administrative Law Judge has a duty to develop a full and fair

11    record.  Disability hearings are not adversarial proceedings in

12    the truest sense.  That duty is particularly acute when a

13    plaintiff is acting pro sé unrepresented such as occurred in

14    this case.  *Bodine v. Colvin*, 2013 WL 1108625 from the Northern

15    District of New York, 2013, that was adopted at 2013 WL 1104127

16    on March 18, 2013, that is also supported by *Morris v.*

17    *Berryhill*, 721 F. App'x 25 from the Second Circuit Court of

18    Appeals, January of 2018.

19          As a side note, I reviewed the colloquy that occurred

20    at the outset of the hearing concerning the right of plaintiff

21    to have counsel or some other non-attorney representative appear

22    on his behalf at the hearing.  The colloquy occurs at 163 to 166

23    of the Administrative Transcript.  I find that the colloquy was

24    adequate in carrying out the Administrative Law Judge's duty in

25    that regard, *Genito v. Commissioner of Social Security*, 2017 WL

1   1318002, that is from the Northern District of New York, 2017.

2          The plaintiff's claim is that records should have

3   been obtained concerning his endometriosis and PCOS and they

4   would have resulted in additional limitations.  In his argument,

5   however, he does not identify what those limitations would be.

6   The duty under *Bodine* and the other case that I've cited to

7   develop the record only appears if there are gaps and the

8   question of disability cannot be decided on the existing

9   evidence.  In this case, I find no obvious gaps and, therefore,

10  there was no duty to further develop the record.

11          Here, the Administrative Law Judge had before her

12  notes of treatment of both -- from physical and mental

13  providers, as well as consultative opinions from Dr. Dennis M.

14  Noia, a psychologist who examined the plaintiff, and Dr. Kalyani

15  Ganesh, who conducted an orthopedic examination.  There was also

16  information from Dr. Mary McLarnon.  The Administrative Law

17  Judge specifically asked the plaintiff if there was any

18  additional evidence that should be secured at 165 and 166, and

19  asked at page 167 if there was anything missing, to which the

20  plaintiff responded no.  The plaintiff was represented by

21  counsel before the Appeals Council, but did not submit

22  additional records from those two providers that I just

23  identified or ask for time to secure those additional records,

24  so I find no error.  I also find that if there was an error in

25  this regard, it is harmless because the treatment notes in the

1  record show that plaintiff's PCOS was stable and don't appear to

2  indicate any additional limitations on his ability to perform

3  work functions.

4          Turning to the nonexertional limitations and the

5  claim that additional limitations should have been included in

6  the RFC, I note that Dr. Dennis Noia examined the plaintiff on

7  June 30, 2017.  His report appears at page 560 through 564 of

8  the Administrative Transcript.  On examination, Dr. Noia found

9  that plaintiff's demeanor and responsiveness to questions to be

10 cooperative; his manner of relating social skills and overall

11 presentation was adequate; stated that he looked his stated age;

12 his speech intelligibility was fluent; his thought processes

13 were coherent and goal directed with no evidence of delusions,

14 hallucinations, or disordered thinking; his affect was full

15 range and congruent with his thoughts and speech; his mood was

16 reported to be feeling anxious, somewhat tense, and

17 apprehensive; his sensorium was clear; he was oriented times

18 three; his attention and concentration was intact; his recent

19 and remote memory skills were intact; his cognitive functioning

20 was estimated to be in the average range; insight was listed as

21 good; judgment was listed as good.

22          In his medical source statement, Dr. Noia stated the

23 claimant appears to have no limitations understanding,

24 remembering, or applying simple directions and instructions.  He

25 appears to have no limitations understanding, remembering, or

1    applying complex directions and instructions.  He appears to

2    have no limitations using reasoning and judgment to make

3    work-related decisions.  He appears to have mild limitations

4    interacting adequately with supervisors, coworkers, and the

5    public.  He appears to have no limitations sustaining

6    concentration and performing a task at a consistent pace.  He

7    appears to have no limitations sustaining an ordinary routine

8    and regular attendance at work.  He appears to have moderate

9    limitations regulating emotions, controlling behavior, and

10   maintaining wellbeing.  He appears to have no limitations

11   maintaining personal hygiene and wearing appropriate attire.  He

12   appears to have no limitations being aware of normal hazards and

13   taking appropriate precautions.

14          Dr. Noia's report was discussed by the Administrative

15   Law Judge at page 32.  At page 36, it was given great weight.  I

16   note that a plaintiff -- an ALJ does not have an obligation to

17   adopt all parts of any one particular opinion.  In this case,

18   Dr. Noia's findings are well supported.  At page 33,

19   Administrative Law Judge Hoffman did, when addressing the

20   so-called (b) criteria, did acknowledge mild difficulties in

21   interacting with others and moderate difficulties in adapting or

22   managing self.  Of course, the (b) criterion do not equate to a

23   residual functional capacity finding, but more importantly, mild

24   limitation in social functioning does not preclude interaction

25   with supervisors/coworkers in a normal work setting or the

1    ability to perform basic demands of unskilled work, *Cuenca v.*

2    *Commissioner*, 2016 WL 2865726 from the Northern District of New

3    York, 2016.  So I find that Dr. Noia's opinions do support the

4    residual functional capacity and do not preclude the ability to

5    perform basic work functions, simple unskilled work, or to

6    interact with supervisors, coworkers, and the public.

7             The other argument raised in this regard by the

8    plaintiff hinges on Therapist Fellows's August 1, 2018, two-page

9    letter at page 678 and 679.  That letter generally describes her

10   treatment of the plaintiff.  It does not contain any

11   function-by-function opinions.  The only opinion contained in it

12   is, quote, it is my professional opinion that Jakob is unable to

13   work at this time.  That is an opinion that even plaintiff

14   conceded is not binding on the Administrative Law Judge and

15   could address this matter entrusted to the discretion of the

16   Commissioner.

17            In terms of the plaintiff's argument drawn from this

18   letter, it was based on inference, his interpretation of what

19   LMSW Fellows said concerning the treatment, so -- and of course,

20   as it was noted under the regulations that apply to this case,

21   Therapist Fellows is not an acceptable medical source.  Although

22   the letter appears to be co-signed by Dr. Tohtz, there isn't any

23   evidence in the record that he was truly a treating physician

24   vis-à-vis plaintiff.  So in conclusion, I find no error in

25   addressing and including in the RFC any meaningful opinions from

1    Dr. Noia and Therapist Fellows.

2          Turning to the credibility analysis, undeniably an

3    ALJ must take into account a plaintiff's subjective complaints

4    in rendering the five step disability analysis.  When examining

5    the issue, however, the ALJ is not required to blindly accept

6    the subjective testimony of a claimant, rather an ALJ retains

7    the discretion to weigh the credibility of the claimant's

8    testimony in light of the other evidence in the records.  The

9    analysis of subjective claims of symptomology is essentially a

10   two-step process.  In the first instance, the Administrative Law

11   Judge must determine whether the claimed symptoms are consistent

12   with and supported by objective clinical evidence demonstrating

13   that he has a medical impairment that could reasonably be

14   expected to produce the pain or other symptoms alleged.  If so,

15   the ALJ then must consider various factors in determining

16   credibility.  Those factors are outlined in both 20 C.F.R.

17   Section 416.929 and in Social Security Ruling 16-3p.

18          In this case, Administrative Law Judge Hoffman went

19   through a credibility analysis, discussed plaintiff's claims,

20   and properly engaged in the analysis.  I note that although SSR

21   16-3p references several factors, as does the regulation that I

22   cited, it's not necessary to meet all of the factors or to

23   discuss all of the factors.  In this case, the -- and of course,

24   the Administrative Law Judge's entire decision should be looked

25   to to determine whether the determination of plaintiff's

1   credibility or subjective claims was properly conducted by the

2   Administrative Law Judge.

3            In this case, ALJ Hoffman recited plaintiff's claims

4   at page 35 and rejected them based primarily on plaintiff's

5   function report, including activities of daily living, the

6   opinions of Dr. Noia and Dr. Ganesh, and the relative benign

7   findings specifically of Dr. Noia.  The activities of daily

8   living were outlined at page 36.  Activities of daily living are

9   very much an appropriate consideration.  This case is not unlike

10  *Carvey v. Astrue*, 380 F. App'x 50 from the Second Circuit, 2010,

11  where the Second Circuit rejected -- supported the ALJ's

12  rejection of the plaintiff's testimony based on not only

13  extensive objective medical tests, but also the wide ranging

14  activities of the plaintiff, including shopping, cooking, child

15  care, operating a riding lawnmower, attending school functions,

16  cookouts, and auto races.

17           In this case, especially dealing with the physical,

18  plaintiff literally underwent little or no treatment for his

19  physical condition.  Again, this is a proper consideration under

20  *Diaz-Sanchez v. Berryhill*, 295 F.Supp.3d 302 in the Western

21  District of New York in 2018.  I find that the Administrative

22  Law Judge properly applied SSR 16-3p in considering the

23  plaintiff's subjective reports of symptomology and the resulting

24  finding of the Administrative Law Judge is supported by

25  substantial evidence.

1              At step five, I note that it is the Commissioner's

2    burden at that step to carry.  In this case, the Administrative

3    Law Judge properly relied on SSR 85-15 to address the mental

4    demands of basic unskilled work at page 37 and 38.  The

5    vocational expert's testimony is only required if nonexertional

6    limitations limit the range of work permitted by exertional

7    limitations, *Bombard-Senecal v. Commissioner*, 2014 WL 3778568

8    from the Northern District of New York, 2014, also *Sibala v.*

9    *Astrue* from the Second Circuit, 595 F.3d 402, 2010, and

10   *Pritchard v. Colvin*, 2014 WL 3534987 from the Northern District

11   of New York, 2014.

12             I note that the Second Circuit has held the mere

13   existence of nonexertional limitations does not automatically

14   require the testimony of a vocational expert, *Bapp v. Bowen*, 802

15   F.3d 601 from the Second Circuit, 1986.  And so the finding of

16   nonexertional limitations in this case did not limit the range

17   of work permitted by plaintiff's exertional limitations under

18   *Sibala*, which I cited a moment ago.

19             The plaintiff relies on Magistrate Judge Andrew

20   Peck's decision in *Prince v. Colvin*, 2015 WL 1408411.  It's a

21   decision I'm not sure I, with all due respect to my former

22   colleague, agree with.  I think while SSR 85-15 on its face may

23   only apply in cases involving purely nonexertional limitations,

24   it does provide guidance on the mental demands of simple

25   unskilled work and was properly looked to in that respect by

1    Administrative Law Judge Hoffman.

2          In conclusion, I find that the determination of the

3    Commissioner was supported by substantial evidence and resulted

4    from the application of correct and proper legal principles and

5    I will therefore grant judgment on the pleadings to the

6    defendant.

7          I'd like to thank both counsel and I hope you stay

8    safe during these trying times.

9          MS. KRUPAR:  Thank you, your Honor.

10         MR. NITZE:  Thank you, your Honor.

11         (Time noted:  2:09 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER


         I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

NYRCR, Official U.S. Court Reporter, in and for the United

States District Court for the Northern District of New York, DO

HEREBY CERTIFY that pursuant to Section 753, Title 28, United

States Code, that the foregoing is a true and correct transcript

of the stenographically reported proceedings held in the

above-entitled matter and that the transcript page format is in

conformance with the regulations of the Judicial Conference of

the United States.


         Dated this 4th day of September, 2020.


         x _Hannah F. Cavanaugh_____

           HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

           Official U.S. Court Reporter